IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| EDWARD L. PRINGLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 20-00294-KD-B |
| ) | |
| WEXFORD MEDICAL SOURCES, INC., ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

# ORDER

This action pursuant to 42 U.S.C. § 1983 is now before the Court on the Notice of Appeal, *In Forma Pauperis* Declaration which the Court construes as a Motion for Leave to Proceed *In Forma Pauperis,* and Inmate Account Statement filed by Plaintiff Edward L. Pringle (docs. 30, 32).  Upon consideration, and for the reasons forth herein, the Motion (doc. 32) is DENIED.

Title 28 U.S.C. § 1915(a) provides guidelines for the courts to authorize proceeding without prepayment of fees on appeal.  In relevant part, the statute states as follows:

> (1) Subject to subsection (b), any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress. . . .
>
> (3) An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

28 U.S.C. § 1915(a)(1) & (3).

The Court previously granted Pringle's Motion to Proceed Without Prepayment of Fees (doc. 3). Therefore, Rule 24(a)(3) of the Federal Rules of Appellate Procedure also applies. In relevant part, the Rule sets forth as follows:

> (3) Prior Approval. A party who was permitted to proceed *in forma pauperis* in the district-court action . . . may proceed on appeal *in forma pauperis* without further authorization, unless:
>
>> (A) the district court--before or after the notice of appeal is filed-- certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed *in forma pauperis* and states in writing its reasons for the certification or finding[.]

Fed. R. App. P. 24(a)(3).

Pringle's Motion indicates that in 2021, he received $3,200.00 as a "Government Incentive" and $500.00 from his family, and that he had $1.72 in his inmate account (doc. 32, p. 2). His Inmate Account Statement shows a beginning balance of $1,577.34 on August 2, 2021, which steadily decreased to a balance of $0.81 on February 28, 2022 (doc. 32, p. 3-4). Deposits for the past six months consist of canteen credits ($31.00), money from individuals ($315.00), and a co-pay reimbursement ($4.00) for a total of $350.00.

Since Pringle has shown an inability to pay the appeal filing fee and was previously permitted to proceed *in forma pauperis* in this court, pursuant to the statute and the rule, the Court must determine whether Pringle's appeal is taken in good faith. An appeal is taken in good faith under § 1915(a), when the appellant seeks "appellate review of any issue that is not frivolous when examined under an objective standard." Ghee v. Retailers Nat. Bank, 271 Fed. Appx. 858, 859 (11th Cir. 2008) (per curiam) (citing Coppedge v. United States, 369 U.S. 438, 445, 82 S. Ct. 917, 921 (1962)). "An issue is frivolous when it appears that 'the legal theories are indisputably meritless.'" Ghee, at 859 (quoting Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993)). "In other words, an IFP action is frivolous, and thus not brought in good faith, if it is

'without arguable merit either in law or fact.'" Ghee, at 859-860 (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)).

Pringle did not specify the grounds for appeal in the Notice of Appeal or in the Motion to Proceed *In Forma Pauperis*. However, Pringle objected that the Magistrate Judge "abused his discretion when he accepted" Defendant Wexford Medical Sources, Inc.'s and Dr. Pouparinas' Special Report (doc. 27). Thus, the Court anticipates he may raise this argument on appeal.

In support, Pringle argued that the Defendants deliberately, intentionally, and in a biased and capricious manner failed to disclose the page numbers of evidence in the record when they referenced exhibits in the Special Report (doc. 17).[1] Pringle argued that there were "fifty incidents" where Defendants used "*Id*." without page numbers. He appears to believe that using "*Id*." without page numbers rendered the Magistrate Judge incapable of locating the evidence in support of Defendants' factual allegations and legal arguments, and therefore, the Magistrate Judge relied upon unsupported arguments and allegations when granting summary judgment in their favor. Pringle states that

> The Magistrate failed to mention that (50) fifty incidents lack the page number where the collaborating evidence is located in the record, instead, allowed the unsupported statements influence his better judgment, then commented Wexford's Motion for summary judgment claims "were otherwise properly supported their Motion, even though the Magistrate had nothing to support Wexford's "lack of evidence to support their Motion for summary judgment.

(Doc. 27, p. 3) (*sic*). He also states that he "was compelled to answer the [Special Report] to the Court for summary judgment, however the right was infringed upon, having (50) instances where

---

[1] Pringle refers to "Wexford's Report and Recommendation" but he appears to mean the Special Report (doc. 27). Review of the Special Report shows that the writer cited "Exhibit A" - Dr. Pouparinas' declaration, without reference to specific page numbers (doc. 17, p. 2). The writer then used "*Id*." without page numbers to cite to Exhibit A to the declaration, which was approximately 600 pages of medical records (doc. 17-2 through 17-8) and to cite to Exhibit B, the Inmate Movement History (doc. 17-9).

the reference page number had not been disclosed." (Id., p. 4). From this, Pringle argues that granting summary judgment "under the (50) fifty deliberate ommittings (*sic*) of page-number-references" was prejudicial and a "manifest injustice", a violation of the Brady rule, a "violation of the Due Process Clause, and a violation of a bedrock standard Fundamental Fairness Doctrine, a foul blow to Plaintiff by the Court and the Defendants" (doc. 27, p. 2-5, 7, 10-11).

However, Pringle responded to the Special Report and did not argue that the fifty "*Id.*" citations were such that he could not adequately respond (doc. 22).  Nor did he argue in his response that the fifty "*Id.*" citations prevented an adequate review of the record by the Magistrate Judge.  Instead, he proceeded with his rebuttals to the Defendants' allegations of fact and legal argument.  Only after the Report and Recommendation was entered, did he raise this argument. Applying an objective standard, this argument would be without merit, and therefore not brought in good faith.

Pringle also indicates that he might raise the issue of "treatment" on appeal.  He states that "when the doctors used treatment in this case, [wiped with an alcohol pad] should have been used" and "should the Magistrate accept "treatment" as proper medical language, the Plaintiff will patiently wait to see what the Eleventh Circuit Court describes treatment to mean." (Doc. 27, p. 5) (bracketed text in original).  Pringle had alleged that Defendants were deliberately indifferent to his serious medical needs. Specifically, the infection on his toe which ultimately led to an amputation.  The record indicates that the treatment Pringle received was much more extensive than a wipe with an alcohol pad (doc. 26, Report and Recommendation).  Applying an objective standard, singling out one treatment to argue that Defendants violated his rights under the 8th Amendment is not a good faith basis for appeal.

After review of the record, the Special Report, Pringle's response to the Special Report, and the Report and Recommendation, the Court finds that Pringle's appeal is frivolous and not

taken in good faith. As previously stated, an appeal is taken in good faith when the appellant seeks "appellate review of any issue that is not frivolous when examined under an objective standard." Ghee, 271 Fed. Appx. at 859. Applying an objective standard, issues Pringle may seek to raise on appeal would be frivolous and any argument to the contrary would be without arguable merit either legally or factually.

Although appointment of counsel was not addressed in the Report and Recommendation, Pringle included argued in his objection that the Magistrate Judge erred by failing to grant his motion for reconsideration of the previous denial of his motion for appointment of counsel (doc. 27, p. 6-9, 11). The Magistrate Judge denied his motion on January 4, 2022. As to non-dispositive orders, a "party may serve and file objections to the order within 14 days after being served with a copy." Fed. R. Civ. P. 72(a). Giving Pringle the benefit of three days for service by mail, see Fed. R. Civ. P. 6(d), his objections were due January 21, 2022. Thus, Pringle's objection was untimely filed on January 24, 2022, the day he signed the Certificate of Service (doc. 27, p. 11).[2] Should Pringle argue on appeal that this Court failed to address this objection, the issue would be frivolous because the objection was untimely. Moreover, had the objection been timely, the Court would have affirmed the decision of the Magistrate Judge.

Pursuant to 28 U.S.C. § 1915(b)(1),[3] Pringle is obligated to pay the $505.00 appeal fee.

---

[2] Houser v. United States, 808 F. App'x 969, 971 (11th Cir. 2020) ("Under the prison mailbox rule, a pro se prisoner's § 2255 motion is deemed filed on the date the prisoner delivers the motion to prison authorities for mailing. . . . Thus, '[a]bsent evidence to the contrary, we assume that a prisoner delivered a filing to prison authorities on the date he signed it' and '[t]he burden is on the Government to prove the motion was delivered to prison authorities on a date other than the date the prisoner signed it.'") (citations omitted).

[3] Title 28 U.S.C. § 1915(b)(1) provides as follows: "Notwithstanding subsection (a), if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and, when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of-- (A) the average monthly deposits to the prisoner's account; or (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the

Review of his Inmate Account from the Alabama Department of Corrections (ADOC) shows a balance of $0.81.  Since no funds exist from which to collect, the ADOC, as the agency with custody of Pringle is directed to withdraw, when funds become available, an initial partial filing fee of 20 percent of the greater of the average monthly deposits to Pringle's account or the average monthly balance in his account for the six-month period preceding the filing of the notice of appeal, and remit same to the Clerk of Court. 28 U.S.C. § 1915(b)(1).

After payment of the initial partial filing fee, Pringle is required to make monthly payments of 20 percent of the preceding month's income credited to his account. 28 U.S.C. § 1915(b)(2).  The ADOC is directed to withdraw 20% of the "preceding month's income credited to" Pringle's account every month and remit that amount to the Clerk of Court "each time the amount in the account exceeds" $10.00 until the $505.00 appeal filing fee is paid. (Id).

The Clerk of Court is directed to mail a copy of this order to Pringle and to the Business Manager at Holman Correctional Facility, Holman 3700, Atmore, Alabama 36503-3700.  The Clerk is also directed to mail a copy of this Order to the ADOC.

**DONE** and **ORDERED** this 20th day of April 2022.

<u>s / Kristi K. DuBose</u>
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**

---

filing of the complaint or notice of appeal. (2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid."